# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ROBERT D. SMITH,

                    **Plaintiff,**

v.                                              **Case No. 05-C-871**

COUNTY OF RACINE,
ROBERT D. CARLSON,
JIM SCHERFF,
and JOHN DOE,

                    **Defendants.**

---

## DECISION AND ORDER

---

        The Plaintiff, Robert D. Smith ("Smith"), filed this action against the County of Racine ("Racine County"), Wisconsin; Robert D. Carlson ("Carlson"); Jim Scherff ("Scherff"); and John Doe ("Doe") on July 20, 2005, in Racine County Circuit Court.[1] The Defendants filed a Notice of Removal on August 15, 2005. Smith's complaint sets forth a civil rights claim for violation of 42 U.S.C. § 1983 (Claim II: Violations of 42 U.S.C. § 1983: Delay and Denial of Medical Treatment), a common-law negligence claim (Claim I: Negligent Delay in Treatment), and a punitive damage claim (Claim III). The Defendants filed a motion for summary judgment (Docket No. 23) seeking dismissal of the action, which is addressed herein.

---

[1]Pursuant to a stipulation by the parties, the Court dismissed a fifth defendant, Lynn A. Fredrickson ("Fredrickson"), on September 26, 2006.

Following Smith's December 2003, arrest, he was sentenced to six months in Racine County Jail ("Jail") for obstruction of justice and failure to pay child support.[3] (DPFF ¶ 33.) While incarcerated in the Jail, Smith started feeling ill on February 29, 2004, and requested medical treatment. (*Id*. at ¶¶ 48-56.) His illness resulted in his hospitalization on March 4, 2004. (*Id*. at ¶¶ 73, 76-77.) Two days later, Smith had a pulmonary event (*Id*. at ¶ 146), and he remembers nothing until he awoke at a rehabilitation hospital about a month to month and a half later. (*Id*. at ¶¶ 83-84).

*I. Smith's Medical History*

Smith has been hospitalized about 20 times in the past decade. (*Id*. at ¶ 34.) Smith has a history of illnesses, including Type II diabetes, severe dental disease, peptic ulcers, bipolar disorder, and high blood pressure. (*Id*. at ¶¶ 35-40.) Smith's dental condition was so poor that he had Ludwig's angina, which can lead to heart and respiratory problems. (*Id*. at ¶ 87.)[4] Before December 2003, Smith was an alcoholic, smoked two to three packs of cigarettes per day, and had respiratory problems. (*Id*. at ¶ 86.) He also had bronchitis, severe toothaches and general dentition problems, the flu, abscesses, and a few broken bones. (*Id*.

---

[2]Unless otherwise stated, the relevant facts are based on the Defendants' proposed findings of fact ("DPFF"), the Plaintiff's response to the defendant's proposed findings of fact ("PPFF") and the Defendants' reply to the Plaintiff's proposed findings of fact ("DRFF") to the extent they are undisputed.

[3]Neither the defendants' proposed finding of fact nor the cited underlying factual material indicate the date of Smith's obstruction of justice and failure to pay child support conviction.

[4]The Defendants' proposed findings of fact refer to the condition as "Lidwig's angina," rather than "Ludwig's angina." Ludwig's angina is "acute cellulitis of the soft tissues below the mouth. Symptoms include pain, dysphagia, and potentially fatal airway obstruction." *Merck Manual of Diagnosis and Therapy* 824 (Mark H. Beers et al. eds., 18th ed. 2006).

at ¶ 35.)  While Smith was at the Jail, he was on diabetes medication.  (*Id*. at ¶ 42.)  According to Smith, his medication was administered by Jail correctional officers.  (*Id*. at ¶ 43.)

## II.  Jail's Medical Services

The Racine County Sheriff's Department (the "Department") contracts with Health Professionals Limited ("Health Professionals") to provide all on-site medical services to Jail inmates.  (*Id*. at ¶¶ 7-8.)  The services of all doctors and nurses at the Jail are provided by Health Professionals.  (*Id*. at ¶ 10.)  The contract which Racine County and the Racine County Sheriff entered into with Health Professionals states: "Three full-time, registered nurses and one full-time, licensed practical nurse will provide nursing coverage 7 days a week, 20 hours per day."  (Scherff Aff. ¶ 2, Ex. A (Agreement for Provision of Inmate Health Services at the Racine County Jail executed January 30, and 31, 2003).)

Under the Department's "Sick Call-Inmate" policy and procedure, inmates may fill out "request for medical attention" forms that are distributed each morning.  (*Id*. at ¶ 11.)  Jail staff members pick up the forms at about 9:15 a.m. each day but they do not screen the forms.  (*Id*.)  Jail staff "will simply route all the forms to the jail health care office, by approximately 9:30 a.m., on the days when the jail nurse is on-duty."  (*Id*.)  The Jail nurse screens all forms each day and determines which inmates need attention and by whom.  (*Id*.)  Smith could also request help through his jail cell's emergency call button and through his daily, almost hourly, contact with correctional officers.  (*Id*. at ¶¶ 45-46.)  During Smith's

routine contact with the guards he asked for medical attention and was told to follow the procedure for submitting a request for medical attention.[5]  (PPFF ¶ 3.)

Racine County Sheriff's Department Policy & Procedure 584.100A regarding "Referral of Inmates for Health Care" states:

> In order to ensure provision of adequate health care to inmates of the Racine County Jail, a system shall be in place whereby jail staff members can refer any inmate to jail health care staff, for any reason. The jail nurse or other jail health care staff shall evaluate each such referral in order to determine proper disposition.

(Tofte Aff. ¶ 6, Ex. D (Racine County Sheriff's Department Policy & Procedure 584.100A).) The procedure further states: "If any jail Staff member or supervisor feels that an inmate is ill or injured or has a medical or dental problem which *may* require medical or dental attention prior to the next scheduled sick call, he or she will contact the jail nurse if he or she is on duty (or other designated jail health care staff member), either in-person or by telephone, to advise him or her of the situation."  (*Id*.)  The procedure also states:  "Jail nurse or other health care staff member will, evaluate each such referral as soon as reasonably  possible in order to determine proper disposition.  The nurse shall see an inmate who has been referred for care in person, either in the health care office or in the inmate's living area as soon as possible."  (*Id*.)

_____

[5]The underlying cited factual material, Smith's deposition at page 108, does not provide the date(s) of these oral requests.  (*See* Morris Aff. ¶ 3, Ex. A (Smith Dep.) 108.)

4

### III. Smith's Illness

Smith stated he felt a popping sensation in his head, a sore throat, and flu-like symptoms on February 29, 2004.[6]  (*Id*. at ¶¶ 48-51.)  That night, Smith completed a request for medical attention form, reporting a "strange" popping sensation in his ear, and further stating:

> Woke up this morning and my whole right side of my head is swollen.  And I feel a lot of pressure in my ear.  And when I swallow it my throat is sore.  Also feel light headed with the chills.  I am very sick. High fever.  I am also a diabetic.

(PPFF ¶ 2, Tofte Aff., Ex. A (Fredrickson Dep.), Ex. C, Smith Dep. Ex. 1).)  Smith gave the form to an unidentified correctional officer.  (PPFF ¶ 2.)  Fredrickson, the Jail nurse, did not work February 29 or March 1, 2004, and she did not see the medical request form until after Smith was hospitalized.  (*Id*. at ¶ 1; Tofte Aff., Ex. A 21; DRFF ¶ 2.)  Someone with the RN designation whom Fredrickson assumed worked for Health Professionals initialed the February 29, medical request form on March 3.  (Tofte Aff., Ex. A 37-40.)   The form is annotated: "Seen in sick call 3/3/04 KAARN."  (Tofte Aff., Ex. C., Smith Dep. Ex. 1.)

On March 1, Smith talked to the guards but did not raise medical problems with them.  (DPFF ¶ 57).  Smith ate normally that day.  (*Id*. at ¶ 58.)

On March 2, Smith pushed his cell's emergency call button, and an unidentified guard removed Smith from his cell to converse.  (*Id*. at ¶¶ 61-62.)  After Smith related his

---

[6]The Court takes judicial notice that February 29, 2004, was a Sunday. *See Wright v. Farmers Nat. Grain Corp.*, 83 F.2d 666, 666 (7th. Cir. 1936) (taking judicial notice of date of particular day of the week).

symptoms, the guard responded that if Smith was not incarcerated he would be taking "Nyquil" at home and directed Smith back to his cell. (*Id*. at ¶¶ 63-64.)

On March 3, Smith pushed the emergency call button, and an unidentified guard took him to see Fredrickson.[7] (*Id*. at ¶¶ 65-66; Tofte Aff., Ex. A 9-10.) Fredrickson examined Smith, called Dr. Bohlmann ("Bohlmann"),[8] and obtained a prescription for antibiotics. (DPFF ¶¶ 66-67.) Smith spent the rest of the day in bed. (*Id*. at ¶¶ 68, 71.) Smith does not remember whether he received antibiotics. (*Id*. at ¶¶ 69-70.) Because of Smith's vomiting that night, the jail staff contacted Bohlmann who advised that Smith should not receive any antibiotics until he was seen by a nurse. (*Id*. at ¶ 72.)

On March 4, Smith pushed the emergency call button. (*Id*. at ¶ 75.) He had been vomiting, felt light-headed, and had the chills and a sore throat. (*Id*. at ¶ 74.) An unidentified guard took Smith in a wheelchair to the medical unit, where Fredrickson decided to transfer Smith to All Saints Hospital, in Racine, Wisconsin. (*Id*. at ¶¶ 74-76; Tofte Aff., Ex. A 29-31.)

Hospital staff took chest x-rays and determined that Smith had pneumonia. (DPFF ¶ 77.) Smith was placed in the intensive care unit and spent several days there before

---

[7]Smith submitted a second undated medical attention request form stating:

> I have been very sick the past 4 days and I am getting worse not better. . . . I cannot swallow solid food. It even hurts to drink water. I am a diabtic [sic] and I don't want to get dehydrated. Also I need to put something in my stomach so could you please see me ASAP.

(Tofte Aff., Ex. C, Smith Dep. Ex. 1.) The form bears the notation: "noted 3/3/04[.] Seen by nurse today 3/3/04 KAARN[.] Issues addressed." (*Id*.)

[8] The parties' submissions do not disclose Bohlmann's first name.

transferring to a regular room.  (*Id*. at ¶ 79.)  Medical records suggest the hospital staff was preparing Smith for release from the hospital.  (*Id*. at ¶ 80.)  Smith spoke with his younger brother, Alan Smith ("Alan"),[9] and Smith was sitting up and starting to feel better.  (*Id*. at ¶ 81.)

On March 6, while Smith was sitting in a chair drinking a soda in his hospital room, Smith became sleepy and got into bed.  (*Id*. at ¶¶ 82-83, 146.)  Smith next remembers waking up about one to one-and-a-half months later in a rehabilitative hospital.  (*Id*. at ¶¶ 82-84.)  According to Alan, Smith was taken to an intensive care unit, and the hospital staff performed a tracheotomy to allow Smith to breathe.  (*Id*. at ¶ 136.)  Because Smith was very agitated, he was sedated, placed on a respirator, and a coma was induced.  (*Id*. at ¶¶ 136-39.)  Doctors determined that on March 6th, Smith suffered from atrial fibrillation which lead to respiratory failure.  (Id. at ¶¶ 135, 149.)

From December 2003 until March 2004, while Smith was in the Jail, he telephoned Alan about once a week.  (*Id*. at ¶ 96.)  When Smith became ill in the Jail, he called Alan daily.  (*Id*. at ¶ 97.)  Initially, when Smith called Alan requesting that Alan call the Jail to obtain medical attention for him, Alan thought Smith was exaggerating but the next day Smith called crying and Alan became concerned and called the Jail twice.  (*Id*. at ¶¶ 99-111.)[10] The first time an unidentified sergeant told Alan that he would "see what he could do."  (*Id*.

---

[9]In this Decision and Order, the Court refers to Smith's brother by his given name to distinguish between the siblings thereby departing from its usual practice of referring to an individual by surname.

[10]The Defendants do not dispute that Alan called the Jail twice, but they state that the Jail does not have a record of either telephone call.  (DPFF ¶¶ 110, 115.)  The parties' submissions do not disclose whether incoming calls are documented by the Jail.

7

at ¶¶ 105-109.)  The second time, Alan got basically the same response from an unidentified jail employee who also told Alan to stop calling.[11]  (*Id*. at ¶¶ 111-114.)

### IV.  Medical Opinions

While Smith was at All Saints Hospital, medical consultations were obtained from an ear, nose, and throat specialist, Dr. Dennis Feider ("Feider"), and an infectious disease specialist, Dr. Robert Gullberg ("Gullberg").  (DPFF ¶ 145; Morris Aff. Ex. E 5-9.)  Gullberg determined that Smith had pneumonia and an infection when he was admitted to the emergency room.  (DPFF ¶ 149.)  Gullberg testified that infections can move fast, and that he could not say how sick Smith was before he arrived at the hospital.  (*Id.*)  Gullberg stated Smith's atrial fibrillation was a cardiac condition probably caused by Smith's diabetes and smoking and was not an infection-produced condition, though the stress of an infection could help induce it.  (*Id.*)

Feider testified that Smith stabilized and appeared to improve after he was hospitalized.  (*Id.* at ¶ 146.)  On March 6, 2004, Smith's infection became worse and he suffered the  pulmonary event.  (*Id.*)  Feider testified that predicting how an infection will progress is difficult.  (*Id.*)  Although Feider testified that he could not say with a reasonable degree of medical certainty that the treatment or lack of treatment at the Jail resulted in Smith's pulmonary event, (*Id.* at ¶ 147), Feider testified:

> I think most likely if he had been treated earlier, his
> course wouldn't have been as severe.  It's hard to say

---

[11]There is a genuine factual dispute between the parties as to whether the guard simply told Alan it was inappropriate to call or whether he told Alan it was inappropriate for him to call on Smith's behalf.  (*Compare* DPFF ¶ 113 with PPFF ¶ 4.)  The factual dispute is not material.

how much earlier, but – so we're talking four days.
That's quite a bit of time between symptoms and being
treated. So I think there is a good chance that if he had
gotten antibiotics several days sooner, that his course
might have been much different.

(PPFF ¶ 7.)

Smith filed a notice of claim with Racine County, which it denied on February

8, 2005. Thereafter, Smith filed this action against the Defendants.

## MOTION FOR SUMMARY JUDGMENT

The Defendants seek summary judgment dismissing Smith's § 1983 claims

against the individual defendants because there is no evidence of their personal involvement

in the allegedly unconstitutional conduct, the defendants did not violate Smith's constitutional

rights, they have qualified immunity from Smith's claim for money damages against them in

their individual capacity. They also seek summary judgment dismissing Smith's § 1983 claims

against Racine County because there is no evidence of an unconstitutional custom, policy, or

practice. The Defendants also seek dismissal of Smith's supplemental state negligence claim,

and his punitive damage claim against Racine County.

Although opposing summary judgment generally, Smith states that his § 1983

claim against Carlson and Doe may be dismissed because there are no unknown individuals

to be named and the "link between the wrongful conduct" and Carlson is "too weak to proceed

with this claim." (Pl.'s Br. Opp'n Summ. J. 7.) Based on Smith's concessions, which

establish that Smith does not have viable § 1983 claims against Doe or Carlson, those claims

are dismissed.

9

Smith did not respond to the Defendants' argument regarding his punitive damage claim. Smith's complaint includes a third claim for punitive damages against the Defendants. Punitive damages are a remedy, not a claim.

However, the Court notes that a municipality such as Racine County cannot be held liable for punitive damages under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Wisconsin law also forbid punitive damage awards in tort actions against municipalities. Wis. Stat. § 893.80(3). As such, those claims are dismissed.

The Court will address the contested issues presented by the Defendants' request for summary judgment dismissing Smith's § 1983 claim against Scherff and Racine County, and his negligence claim against them.

*Summary Judgment Standard*

When considering a motion for summary judgment, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A party "opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248; also citing *Celotex*, 477 U.S. at

324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *United States v. Rode Corp.*, 996 F.2d 174, 178 (7th Cir. 1993)).

"Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the moving party. In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587.

ANALYSIS

*I. Section 1983 Claim*

Smith claims that Scherff and Racine County violated 42 U.S.C. § 1983 by delaying his medical treatment. The record does not disclose the date of Smith's conviction, so it is unclear whether he was a pretrial detainee or a convicted prisoner from February 29, through March 4, 2004.

*Medical Treatment of Pre-Trial Detainees and Incarcerated Persons*

The Fourteenth Amendment due process clause protects pretrial detainees from deliberate indifference to their serious medical needs and those protections are at least as expansive as those of the Eighth Amendment. *See Chapman v. Keltner*, 241 F.3d 842, 845

(7th Cir. 2001); *Board v. Farnham*, 394 F.3d 469, 477-78 (7th Cir. 2005) (internal citations and quotation marks omitted) (emphasis and alterations in original). Therefore, in cases involving pre-trial detainees, courts commonly consult the "analogous standards of Eighth Amendment jurisprudence." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002).

The Eighth Amendment's prohibition against cruel and unusual punishments protects inmates from deliberate indifference to serious medical needs, including delayed medical care. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition, and 2) an official's deliberate indifference to that condition. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir.2006)); *Tesch v. County of Green Lake*, 157 F.3d 465, 473 (7th Cir. 1998). An objectively serious medical need includes both diagnosed conditions requiring treatment and conditions "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Williams*, 491 F.3d at 714 (quoting *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000)).

In cases where prison officials have delayed, rather than denied, medical assistance to an inmate, some courts including the court of appeals for this circuit require that the plaintiff offer "verifying medical evidence" that the delay (rather than the inmate's underlying condition) caused some degree of harm. *Williams*, 491 F.3d at 714-15 (citing *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996); *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 344 (6th Cir. 2007); *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005); *Surber v. Dixie County Jail*, No. 06-11898, 206 Fed. Appx. 931, 933, 2006 WL 3334957 (11th

Cir. Nov. 17, 2006)).  That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental.  *Williams*, 491 F.3d at 715.

## A.  Scherff

Scherff, a captain at the Jail, maintains that Smith's § 1983 claims against him should be dismissed because of the lack of his personal involvement.  (Defs' Br. Supp. Summ. J. 24.)  He also asserts that Smith's individual capacity claim for money damages would be subject to dismissal based on qualified immunity.  (*Id*. at 34-36.)

Smith contends that a series of wrongful delays by Jail officers in responding to his February 29, 2004, medical request, his pushing the emergency call button, and Alan's two requests for medical attention on Smith's behalf unconstitutionally deprived him of medical treatment.  To find Scherff liable, Smith must prove that Scherff "personally participated in or caused" an unconstitutional delay of medical treatment.  *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (citing *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981)).  *See also*, *Morfin v. City of E. Chi.*, 349 F.3d 989, 1001-02 (7th Cir. 2003).  An official can meet the "personal involvement" requirement when he or she directs or consents to the questioned conduct.  *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994) (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)).

Smith does not maintain that Scherff participated directly in any delays or that he directed or consented to his subordinates' conduct.  Instead, Smith argues that the Jail officers' conduct raises the inference that Scherff knew of and adopted his subordinates' misconduct.  That is not enough.  *See Black*, 22 F.3d at 1401, n.8.  "Supervisors who are

13

merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citations omitted). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id*. In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Hildebrandt v. Ill. Dep't of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). Despite construing the facts in the light most favorable to Smith, he has not presented evidence from which a causal connection or affirmative link between the alleged unconstitutional delay in medical treatment and Scherff inferred by a reasonable jury. Therefore, Smith's § 1983 claim against Scherff is dismissed.

The Court also notes that qualified immunity bars Smith's claim for money damages against Scherff in his individual capacity. Government officials who perform discretionary functions are entitled to qualified immunity that shields them from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts should determine as early as possible whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). A court conducts a two-step test when evaluating qualified immunity. First, the Court must determine whether the facts alleged show the Defendant's conduct violated a constitutional right. *Id*. at 201. Second, the Court must ask whether the right was clearly established. *Id*. "[A] prison official cannot be

found liable . . . for denying an inmate inhumane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Smith has not presented evidence from which a reasonable jury could infer that Scherff was aware of the facts surrounding Smith's requests for medical treatment at the Jail. Smith cannot defeat the first prong of the qualified immunity test because he has not presented facts showing that Scherff's conduct violated a constitutional right. Smith's claim against Scherff is dismissed.

## B. Racine County

Racine County contends that it is not liable under 42 U.S.C. § 1983 because Smith has not presented facts showing that Racine County had a widespread practice of delaying medical treatment to inmates, thereby harming Smith. Smith cannot hold Racine County liable under § 1983 solely because of the actions of its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To establish Racine County's liability, therefore, Smith must show that he was deprived of a federal right as a result of "(1) an express [municipal] policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;" or (3) a person with final policymaking authority for Racine County who caused or ratified Smith's constitutional injury. *See Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006) (quoting

*Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997)); *see also Monell*, 436 U.S. at 690-91.

Smith asserts that Racine County has a prevalent practice or custom of disregarding medical requests until an inmate has an actual emergency and that Jail staff members were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Again, Smith points to his written requests for medical attention, his activations of the emergency call button, and Alan's two requests for medical treatment for Smith. Smith completed his medical request form the night of February 29. A nurse at the Jail saw him on March 3, and the Jail transferred him to All Saints Hospital on March 4. This evidence does not establish misconduct that is widespread, permanent, or well-settled. "[T]he word 'widespread' must be taken seriously. . . . The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Phelan*, 463 F.3d at 790.

Smith does not present facts that would indicate a pervasive practice. His claim concerns one inmate, himself, over the course of about four days. While the Seventh Circuit has stated that "generally speaking," a single plaintiff is not foreclosed from pursuing § 1983 claims based on "municipal policy," Smith has not presented evidence, when considered in the light most favorable to Smith, upon which a reasonable jury could find that Smith demonstrated repeated actions against him which evince the existence of a policy. *See Id*. at 789-90. Absent evidence of a consistent pattern of Racine County's disregard for the medical requests of inmates, Smith's § 1983 claim against Racine County is dismissed.

## II. Negligence Claim

### A. Jurisdiction

Jurisdiction over Smith's state-law claim against Racine County is based on the supplemental jurisdiction statute, 28 U.S.C. § 1367. The statute provides that a district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). *Wright* identifies three circumstances when a district court should retain jurisdiction over supplemental claims: (1) when the statute of limitations would bar the refiling of the supplemental claims in state court, (2) when substantial federal judicial resources already have been expended on the resolution of the supplemental claims, and (3) when it is obvious how a court should decide the claims. *Id.* at 1251-52.

Racine County asserts that the Court should relinquish Smith's state negligence claim. Although the usual rule calls for relinquishing supplemental claims to the state courts when all federal law claims are dismissed before trial, the Court must balance the factors of judicial economy, convenience, fairness, and comity. *Id.* at 1252. In this case, those factors favor retaining Smith's state negligence claim under the second *Wright* exception.[12]

Smith filed the lawsuit in 2005, and the parties conducted discovery and submitted briefs on the Defendants' summary judgment motion in October of 2006. The Court

---

[12]Smith maintains that the Court should retain jurisdiction over his negligence claim because Wisconsin's statute of limitations would bar him from refiling the claim in state court. Wisconsin law tolls the statute of limitations for the time when a Wisconsin cause of action is filed in a non-Wisconsin forum. Wis. Stat. § 893.15(3); *Wentzka v. Gellman*, 991 F.2d 423, 426 n.3 (7th Cir. 1993). For purposes of § 893.15, a "non-Wisconsin forum" is defined as "all courts, state or federal, in states other than this state and federal courts in this state." *See* Wis. Stat. § 893.15(1). Thus, the first *Wright* exception is not a factor here.

has devoted substantial resources to this action and the facts relating to Smith's negligence claim are largely the same as those relating to his § 1983 medical delay claim. Relinquishing Smith's state claim at this juncture of the proceeding would not be fair, convenient, or an efficient use of judicial resources. *See Rothman v. Emory Univ.*, 123 F.3d 446, 454-55 (7th Cir. 1997); *Timm v. Mead Corp.*, 32 F.3d 273, 276-77 (7th Cir. 1994).

## B. Immunity

Racine County contends that Wisconsin's governmental immunity statute protects from liability the discretionary actions of the Jail staff. Wis. Stat. § 893.80(4). The statute immunizes units of local government and public officers from suit over any act involving the exercise of discretion and judgment. *Lodl v. Progressive N. Ins. Co.*, 646 N.W.2d 314, 320 (Wis. 2002). Governmental immunity is subject to several exceptions, including for ministerial duties imposed by law. *Id.* at 321. "A ministerial duty is one that 'is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Id.* (quoting *Lister v. Bd. of Regents of the Univ. of Wis. Sys.*, 240 N.W.2d 610, 622 (Wis. 1976)).

Smith contends that the statute does not immunize Racine County because Jail staff failed to carry out ministerial duties – conveying Smith's medical request form to the Jail nurse and disregarding multiple other requests for medical treatment. Jail policy outlines the time and procedure for how Jail staff must handle inmate medical request forms. The policy

leaves nothing to the discretion of staff members. The distribution of completed request for medical attention forms to a nurse is a ministerial act. *See Id.*

There is no evidence of Jail policy that specifically addresses the responses of Jail staff to other medical requests made by Jail inmates. While the Jail policy authorizes Jail staff members to refer any inmate to Jail health care staff for any reason, that referral rests on the Jail staff member's evaluation of whether an inmate is ill or has a medical or dental problem which may requiring medical or dental attention before the next sick call. Thus, Jail staff members' responses to Smith's and Alan's verbal requests for medical treatment were discretionary in nature and are entitled to governmental immunity.

Separating the ministerial acts of the Jail staff from their discretionary acts would lead to an awkward result because Smith maintains that his injury was caused by the series of acts, not by a single act. However, the issue need not be resolved because Smith's negligence claim is subject to dismissal because he has not presented facts upon which a reasonable jury could find in his favor on the causation element.

## C. Causation

The plaintiff concedes that he cannot meet the traditional burden of production, but he maintains that an exception to that traditional burden of production on causation applies to his case and would allow his negligence claim to survive summary judgment. In *Ehlinger v. Sipes*, the Wisconsin Supreme Court held that in some medical malpractice cases, the plaintiff need only produce evidence "that it is more probable than not the treatment could have lessened or avoided the plaintiff's injury had it been rendered." 454 N.W.2d 754, 763

(Wis. 1990). The *Ehlinger* exception was subsequently limited to medical misdiagnosis and medical omission cases. *See Beacon Bowl, Inc. v. Wis. Elec. Power Co.*, 501 N.W.2d 788, 806 (Wis. 1993).

Here, Smith asks the Court to apply *Ehlinger* to his negligence claim against a local governmental unit and municipal employee based on alleged delayed medical treatment. Wisconsin courts have applied *Ehlinger* in medical malpractice cases against doctors, hospitals, and other health-care entities, but the Court's research does not disclose any cases applying *Ehlinger* against non-medical governmental parties or employees.[13]

While the question is difficult, in the absence of case law applying *Ehlinger* in actions beyond traditional medical malpractice suits against health-care entities, and in light of *Beacon Bowl* which limits *Ehlinger* to medical misdiagnosis and medical omission cases, the Court concludes that the Wisconsin courts would not be likely to extend *Ehlinger* to the circumstances presented in this action which is not a traditional medical malpractice claim against a health care entity and involves a delay in medical treatment claim. Therefore, Smith's negligence claim is dismissed upon summary judgment.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Defendants' motion for summary judgment (Docket No. 23) dismissing Smith's civil rights claim for violation of 42 U.S.C. § 1983 (Claim II: Violations of 42 U.S.C. § 1983: Delay and Denial of Medical Treatment), his common-law negligence claim

---

[13] Regarding the delayed treatment aspect, there are two unpublished courts of appeals decisions which are not to be cited in courts of Wisconsin and are of no precedential value. *See* Wis. Stat. § 809.23(3).

(Claim I: Negligent Delay in Treatment), and his punitive damage claim (Claim III) against the Defendants is **GRANTED**.

This action is **DISMISSED.**

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 4th day of September, 2007.

**BY THE COURT**

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**